UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DEERE & COMPANY, an Illinois Corporation and FUNK MANUFACTURING COMPANY, a Kansas Corporation, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 02-4011 ) |
| OHIO GEAR, a South Carolina Corporation and REGAL-BELOIT, a Wisconsin Corporation, | ) ) ) |
| Defendants / Third-Party Plaintiffs, | ) ) ) |
| CARSON'S NUT-BOLT AND TOOL COMPANY, INC., | ) ) ) |
| Third-Party Defendant / Fourth-Party Plaintiff | ) ) ) |
| v. | ) ) |
| J.T.D. STAMPING, INC., | ) ) |
| Fourth-Party Defendant. | ) |

**ORDER**

Before the Court is Plaintiffs' Motion to Bar Testimony. (Docs. 182, 183.) Defendants / Third-Party Plaintiffs Ohio Gear and Regal Beloit filed a single Response to Plaintiffs' Motion to Bar Testimony. (Doc. 185.) Third-Party Defendant / Fourth-Party Plaintiff Carson's Nut-Bolt and Tool Company, Inc. also filed a Response to Plaintiffs' Motion to Bar Testimony. (Doc. 184.) For the following reasons, Plaintiffs' Motion to Bar Testimony is GRANTED in part and TAKEN UNDER ADVISEMENT in part.

## BACKGROUND[1]

In December 1997, Plaintiff John Deere & Company ("Deere") entered into a contract with Defendant Ohio Gear in which Ohio Gear agreed to provide differential assemblies for tractors manufactured by Deere. Deere provided Ohio Gear with specifications for the components of the differential assemblies, including specifications for the type and characteristics of the washer to be used. These specifications expressly required that the washer be heat treated. Ohio Gear shipped the differentials to Plaintiff Funk Manufacturing Company's ("Funk") manufacturing plant in installments over the course of 1998 and 1999. The initial shipments during that time period contained the correct heat treated washers and performed as intended.

However, in February 1999, Plaintiffs received notice that a failure occurred in one of the tractors with a differential assembly provided by Ohio Gear. Specifically, consumers complained of a loud noise emanating from the rear of the tractor. Plaintiffs conducted an investigation and determined the noise was due to non-heat treated ("soft") washers used in the differential assembly.

Plaintiffs notified Ohio Gear that soft washers had been installed in the differential assemblies. Ohio Gear conducted its own investigation and determined the second installment of washers it received from Defendant Carson's Nut Bolt and Tool Company, Inc. ("Carson's")

---

[1] The substance of this background is drawn from Deere's Motion to Bar Testimony (Docs. 182, 183) as well as the transcript from the <u>Daubert</u> hearing held on June 2, 2008. This hearing was terminated at the conclusion of extended opening statements upon the Court's decision to first determine if any of Mr. Kucklick's proffered expert opinions were relevant before proceeding with the evidentiary phase. The background included in Deere's Motion is not disputed by Defendants in their Responses.

were soft washers. Carson's admitted it had inadvertently shipped soft washers received from Fourth-Party Defendant J.T.D. Stamping, who had contracted with Carson's to perform the heat treatment. Ohio Gear further determined the washers could not perform as intended and identified the probable shipping dates of the soft washers to Plaintiffs as between August 1998 and February 1999. During this time period, over 7000 non-conforming washers were shipped.

When Plaintiffs received the complaint in February 1999, they had already installed most of the differentials into tractors which had subsequently been sold throughout the United States and Europe. Due to the large number of tractors fitted with soft washers and the looming planting season, Plaintiffs conducted a large-scale, multi-national recall program to replace the soft washers. The recall program encompassed only the tractors identified or suspected of having differential assemblies with the non-conforming, soft washers. Plaintiffs assert the recall was only to repair the soft washer problem, and cost $3,990,524.00.

Plaintiffs sued Ohio Gear for breach of contract, seeking damages for the costs associated with the recall. Plaintiffs allege the recall was prompted by the reports of a loud noise emanating from the rear of the tractor, and that the soft washers supplied by Ohio Gear caused the noise. Ohio Gear employed Frederick Kucklick, a mechanical engineer, to testify that the differential assemblies would have failed regardless of whether the washers were heat treated. Plaintiffs filed this Motion seeking to exclude Mr. Kucklick's testimony because the information in his report is irrelevant and has no bearing on the case at bar. A hearing on this Motion was conducted on June 2, 2008. After listening to opening statements, the Court decided to first determine which of Mr. Kucklick's opinions, if any, are relevant to the case at bar. Then, if necessary, the Court will conduct an evidentiary hearing to decide whether Mr. Kucklick is

qualified to render such opinions, and whether they are admissible under Federal Rule of Evidence 702 as interpreted by the Supreme Court in Daubert v. Merrell Dow Pharm, Inc., 509 U.S. 579 (1993).

## LEGAL STANDARD

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and the principles set forth in Daubert and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999).  A district court is required to determine, as a threshold matter, whether the expert would testify to valid scientific knowledge, and whether that testimony would assist the trier of fact with the facts at issue.  Daubert, 509 U.S. at 592.  The district court is to act as a 'gate keeper' who determines whether the proffered expert testimony is both reliable and relevant before accepting a witness as an expert.  Autotech Tech. Ltd. P'ship v. Automationdirect.com, 471 F.3d 745, 749 (7th Cir. 2006).  Relevant evidence is that which has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Daubert, 509 U.S. at 587 (quoting Fed. R. Evid. 401).  "Testimony which does not relate to any issue in the case is not relevant," and therefore not likely to assist the trier of fact in determining a fact at issue.  Id. at 591.   It is not necessary to determine whether proposed expert testimony is reliable if the testimony is irrelevant to the present case.  See Ervin v. Johnson & Johnson, Inc., 492 F.3d 901, 904 (7th Cir. 2007).

## ANALYSIS

The purpose of this Order is to determine whether Mr. Kucklick's testimony and report are relevant to this case, meaning he has "applied the principles and methods reliably to the facts

of the case." Fed. R. Evid. 702(3). This order does not address the reliability of Mr. Kucklick's testimony, it only limits its inquiry to determining whether the proffered testimony is relevant to this case. Irrelevant issues need not be subjected to an inquiry as to their reliability. See Ervin, 492 F.3d at 904. Any relevant opinions in Mr. Kucklick's report will be scheduled for an evidentiary hearing to examine their reliability.

Ohio Gear argues Mr. Kucklick's opinions are relevant to the elements of causation and damages. As to causation, Ohio Gear claims that due to overarching design flaws in the differential, the noise that prompted the recall would have existed regardless of whether hard or soft washers were used (see Tr. at 4-5), and that other inherent design flaws would have caused the differential to fail in the future. Ohio Gear further argues that Deere is claiming damages for repairs done during the recall campaign that went beyond replacing the soft washers, and Ohio Gear is not responsible for any additional costs related to those repairs (see Tr. at 7). Ohio Gear has not argued that Mr. Kucklick's testimony is relevant to showing there was no breach of contract for providing soft washers instead of heat treated washers, and none of his reported opinions proffer any evidence that no breach occurred. Therefore, it is not necessary to consider the issue of breach in reviewing the report, and only those opinions that relate to either causation or damages are relevant to the present case.

Mr. Kucklick's report contains the following ten opinions:

> 1. Deere "failed to provide sufficient in-house expertise to engineer, design, and develop [tractor] differentials prior to providing drawings to Ohio Gear for production units." Deere also failed to timely specify a proper spherical land width in the differential case, which demonstrated a lack of expertise.
>
> 2. Deere made many engineering, design, and development errors during its rush to production. Deere knew there were design weaknesses prior to ordering parts

from Ohio Gear.  Deere failed to lab test or field test the differentials prior to installing them in factors.

3.  Deere's design was "defective and resulted in field failures irrespective of the soft spherical washer issue."  A combination of factors "contributed to accelerated wear in the hardened spherical washers and the adjacent housing lands."  Additionally, Deere reports suggest that Deere observed weaknesses unrelated to the soft spherical thrust washer issue in differentials returned to them as a result of the recall.

4.  Deere established two different standards for repairing the soft washer housing in the recall; one for tractors that were already in the field, and another for tractors still in production.

5.  "Deere failed to provide important engineering information to Ohio Gear, including the proper width dimension of the spherical lands of the differential housing."  Different specifications would have resulted in improved performance of the differential.

6.  The soft washers did not cause the differentials to "fail to differentiate. Rather, the accelerated wear of the non-heat-treated spherical washers resulted in noises emanating from the rear of the tractor."

7.  The recall exposed many design defects that Deere would have discovered prior to ordering from Ohio Gear "had Deere conducted thorough and valid engineering, design, and development" prior to ordering parts from Ohio Gear.

8.  Deere benefitted from the recall because it uncovered many weaknesses in the differential design, including weaknesses which could result in future failure of the differentials to differentiate.

9.  Deere incorporated many improvements into a newer tractor differential based on weaknesses discovered during the recall of the Ohio Gear differential.  These improvements created a more robust differential design which would not fail even with soft washers.

10.  Not all costs claimed by Deere were caused by defects due to soft washers, but were the result of "other defects."

For following reasons, this Court finds that Opinions One, Two, Four, Five, Six, Seven, Eight, and Nine are not relevant to the present case.  Opinions Three, Ten are relevant to the present case, as discussed *infra*.

**A. Irrelevant Opinions**

Opinions One, Two, Four, Five, Six, Seven, Eight, and Nine are not relevant to the present case because they do not provide information that would assist a trier of fact in determining a fact at issue in this case.  See Daubert, 509 U.S. at 592.  Furthermore, these Opinions do not make the existence of a fact that is of consequence to the outcome of this case more probable, as required by Federal Rule of Evidence 401.  Therefore, these Opinions will not be admitted as expert testimony.

Opinions One and Two both discuss events that occurred prior to the creation of the contract and are therefore irrelevant.  Ohio Gear argues these Opinions demonstrate the design issues inherent in the differentials and provide evidence that the differentials would have eventually failed regardless of whether the washers were heat treated.  However, whether the differentials would have failed in the future is irrelevant to whether the soft washers caused the noise which prompted the recall.  Additionally, neither Opinion presents any evidence that Deere did more than fix the soft washer problem during the recall.

Opinion Four is irrelevant because it merely states that Deere used two different methods of replacing the soft washers.  It is not relevant to causation because it only describes Deere's response to the reported failure and the method used to repair the failure, but fails to allege that the soft washers did not cause the noise problem.  Furthermore, this Opinion never states that Deere's dual method unnecessarily increased the damages associated with the recall.

In Opinion Five, Mr. Kucklick claims that Deere failed to provide important engineering information to Ohio Gear, and that providing this information would have resulted in improved performance.  This Opinion is irrelevant because it fails to address whether the soft washers

caused the noise problem in the tractors, or increased the cost of the recall. It merely states that, in hindsight, a different design would have resulted in better performance. What Deere could have done to make its design better is not the issue in this case, and would not assist the trier of fact in determining either causation or damages.

Opinion Six is irrelevant in part because it states the soft washers supplied by Ohio Gear did not cause the differentials to "fail to differentiate." However, Plaintiffs are not claiming the recall was due to a failure to differentiate but due to a noise caused by the soft washers. Opinion Six concedes that "accelerated wear of the non-heat-treated spherical washers resulted in noises emanating from the rear of the tractor."[2] Since the noise is precisely what prompted the recall in this case, whether the soft washers caused a "failure to differentiate" is irrelevant.

Opinions Seven and Eight both state that the recall program exposed several design weaknesses in the differential unrelated to the soft washers. Opinion Eight asserts that Deere therefore benefitted from the recall. However, any other flaws discovered during the recall are not relevant to whether the soft washer caused the initial recall. Ohio Gear again argues that both Opinions go toward proving the design was inherently flawed, and that by exposing these flaws, Deere was able to revamp the design and improve the product. Even if this is true, it offers no evidence that the recall was the result of anything other than the soft washers, nor does it provide any evidence, or even an allegation, that Deere included the cost of these other improvements in its calculation of damages.

Finally, Opinion Nine merely states that Deere incorporated improvements into the

---

[2] Of course this part of the Opinion would be relevant but adverse to Ohio Gear's argument, and for all practical purposes it would be reasonable for Ohio Gear to treat it as irrelevant. Therefore, this Court will treat all of Opinion Six as irrelevant.

design of a future differential for a different tractor model as a result of the failure of the Ohio Gear differential. Ohio Gear argues this shows that the design was inherently flawed and would have failed regardless of the soft washers. However, the mere fact that Deere improved a future design has nothing to do with whether the soft washers supplied by Ohio Gear led to the recall in this case.

Therefore, Plaintiffs' Motion to Bar Testimony is GRANTED as to Opinions One, Two, Four, Five, Six, Seven, Eight, and Nine.

### B. Relevant Opinions

Opinion Three and Opinion Ten of Mr. Kucklick's report are relevant to the issues of causation and damages in this case. Both of these Opinions purport to show that Deere incurred costs for repairing problems unrelated to the soft washers during the recall. Additionally, Opinion Three states Deere's design was "defective and resulted in field failures irrespective of the soft spherical washer issue," and that Deere's own test reports indicate other weaknesses were observed and repaired during the course of the recall. (See also Kucklick Dep. 42-45.) These assertions are relevant to the determination of causation as well as damages and should therefore be subject to an evidentiary hearing to determine their reliability as expert testimony.

Opinion Ten is also relevant because it expressly states that "not all [recall] costs claimed by Deere were caused by defects due to soft washers, but were also the result of other defects." This assertion is directly relevant to Ohio Gear's claim that the damages Deere seeks are not all attributable to the soft washers installed in the differentials. Therefore, this information is likely to assist the trier of fact in determining how much of Deere's recall costs, if any, are attributable to Ohio Gear.

Neither Opinion Three nor Opinion Ten is relevant to the issue of liability in this case, and therefore cannot be used for the purpose of proving or denying liability. However, Opinion Three is relevant to causation, and both Opinion Three and Opinion Ten are relevant to the determination of the proper damages associated with this case. Accordingly, an evidentiary hearing is appropriate to determine the reliability of the relevant Opinions.

## CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Bar Testimony is GRANTED in part and TAKEN UNDER ADVISEMENT in part. An evidentiary hearing shall be conducted on **Monday, July 28, 2008, at 10:00 A.M. in Courtroom D,** Federal Courthouse, Peoria, Illinois, to determine if Mr. Kucklick is qualified to testify as to Opinion Three and Opinion Ten and whether those Opinions are reliable and therefore admissible.

ENTERED this   16th   day of July, 2008

                                                   s/Joe B. McDade
                                                  Joe Billy McDade
                                             United States District Judge